| |
|---|
| **Floyd v City of New York** |
| 2025 NY Slip Op 31860(U) |
| May 27, 2025 |
| Surpeme Court, New York County |
| Docket Number: Index No. 150837/2017 |
| Judge: Richard Tsai |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. RICHARD TSAI**

*Justice*

-----------------------------------------------------------------------------X

TRACY FLOYD,

                            Plaintiff,

                  - v -

THE CITY OF NEW YORK, NEW YORK CITY TRANSIT
AUTHORITY, METROPOLITAN TRANSPORTATION
AUTHORITY, MTA BUS COMPANY, INC.,JOHN DOE,
SPEEDWAY PLUMBING CORP., CONSOLIDATED
EDISON COMPANY OF  NEW YORK, INC., and
TRANSCITY W & S, LLC,

                      Defendants.

-----------------------------------------------------------------------------X

| | |
|---|---|
| PART | 21 |
| INDEX NO. | 150837/2017 |
| MOTION DATE | 05/14/2024, 05/21/2024 |
| MOTION SEQ. NO. | 004 005 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document numbers (Motion 004) 85-101, 118-127, 130, 131

were read on this motion to/for            JUDGMENT – SUMMARY      .

The following e-filed documents, listed by NYSCEF document numbers (Motion 005) 102-117, 128, 129, 146-149

were read on this motion to/for            JUDGMENT - SUMMARY      .

     In this action, plaintiff Tracy Floyd alleges that, on August 15, 2016, he was a passenger on a bus that was driving over a steel plate covering a hole in the roadway, and the plate suddenly moved, allegedly resulting in personal injuries.

     Defendants New York City Transit Authority (NYCTA), Metropolitan Transportation Authority, and MTA Bus Company, Inc. (collectively, the Transit Defendants) now move for summary judgment dismissing the complaint and any cross-claims as against them, (Motion Seq. No. 004).  Defendant Transcity W&S, LLC (Transcity) and plaintiff oppose the motion.

     Defendants Speedway Plumbing Corp. (Speedway) separately moves for: 1) summary judgment dismissing complaint and all cross-claims as against it and (2) summary judgment in its favor as to liability on its cross-claims against Transcity for indemnification and contribution (Seq. No. 005).  Transcity and plaintiff oppose Speedway's motion.

     This decision addresses all both motions.

**150837/2017   FLOYD, TRACY vs. CITY OF NEW YORK**
**Motion No.  004 005**

**Page 1 of 13**

[* 1]

## BACKGROUND

At the deposition, plaintiff Tracy Floyd testified that, on August 15, 2016, he was a passenger on an M116 bus on the way to work, sitting behind the bus driver (*see* Exhibit H in support of the Transit Defendants' motion, plaintiff's EBT at 17, lines 17-20; at 18, lines 12-17; at 34, lines 15-16 [NYSCEF Doc. No. 97]).[1]

### The Incident

According to plaintiff, the bus traveled about four to five blocks after plaintiff boarded and then the incident occurred (*id.* at 17, line 23 through 18, line 5). According to plaintiff, "the bus was coming, it hit the hole, the bus went in the hole, I guess it moved the plate, I don't know, but it went in the hole and it went out -- you understand me -- went up, came down" (*id.* at 21, lines 7-10).

At his deposition, Guy Colvin testified that he has been a bus operator employed by the NYCTA for eight years (Exhibit J in support of Transit Defendants' motion, Colvin EBT, at 11, line 21 through 12, line 7 [NYSCEF Doc. No. 99]).

On August 15, 2016, Colvin was operating M116 bus #6728 (*id.* at 30, lines 10-17; at 54, lines 5-7). He testified that he was pulling into bus stop at 116th and Lexington Avenue bus stop to pick up and drop off passengers (*id.* at 80, lines 6-10). Colvin heard a boom and then stopped his bus (*id.* at 81, lines 5-7). According to Colvin, two seconds elapsed from when he heard the boom until the bus came to a complete stop (*id.* at 81, lines 8-12).

Colvin testified that, when he exited the bus, he saw that the back wheel on the passenger side of the bus was "just in front of, right in front of" a metal plate in the roadway, two inches before a hole in the roadway (*id.* at 76, lines 12-17; at 76, line 19 through 77, line 2). When shown a photograph marked as Plaintiff's Exhibit 8 at his deposition, Colvin stated that the photograph "was how his bus looked after the accident" and "how the steel plate and hole looked after the accident" (*id.* at 112, lines 2-12):

(continued on next page)

---

[1] Plaintiff's deposition transcript was also submitted as Exhibit I in support of Speedway's motion for summary judgment (*see* NYSCEF Doc. No. 114).

**150837/2017   FLOYD, TRACY vs. CITY OF NEW YORK**                          **Page 2 of 13**
**Motion No.  004 005**

[* 2]



(*see id.*, Exhibit 8). According to Colvin, the plate had moved, exposing a hole (*id.* at 105, lines 7-10).

Colvin testified that he saw smoke coming from the side of the bus, and when he looked, he saw "stuff leaking" (Colvin EBT, at 74, lines 19-23). Colvin testified that he saw a broken pipe under the bus "that became disconnected" and was hanging from the bus (*id.* at 75, lines 3-4; at 116, lines 11-13, at 117, lines 8-20; *see also* Speedway's Exhibit A in opposition [NYSCEF Doc. No. 119] [black and white photographs]).

Colvin testified that he had seen the metal plate in the roadway a week before (Colvin EBT, at 86, lines 12-14). According to Colvin, he had about driven in the area of the steel plate for "probably three or four days" prior to the incident, and he had about five trips each day (*id.* at 134, lines 2-11). On the morning of the incident, Colvin first saw the steel plate about a car length away as the bus approached it (*id.* at 90, lines 13-15; at 91, lines 14-21). It looked the same as it looked the week before, and also looked safe to drive over (*id.* at 92, lines 8-17). According to Colvin, "it was flat on the ground" (*id.* at 93, line 2).

Colvin testified that his initial training as a bus operator consisted of a school for "a month or two," and then refresher courses ever year (*id.* at 19, lines 12-24; at 21, lines 11-13). When asked if the refresher courses or initial training discussed steel plates, Colvin answered, "Basically, both. When you see those you slow down. You

**150837/2017 FLOYD, TRACY vs. CITY OF NEW YORK**
**Motion No. 004 005**

**Page 3 of 13**

[* 3]

3 of 13

don't drive over those things regularly" (*id.* at 22, lines 23-25).  He then testified as follows:

> "Q. Tell me about what you were taught about a steel plate. I thought I heard you say slow down or don't drive over it?
>
> A. When you see a steel plate you slow down, or if it's raining you go extra slow" (*id.* at 23, lines 2-8).

When asked if there was any custom or practice with regard to avoiding the steel plate altogether, Colvin answered,

> "If the plate, if there's one plate and you don't want to go over it, I mean, like, if you can't go over it, yeah, you can do that. But if there's times when the whole -- if you're on 42nd Street and the whole street is plated it's nothing you can do. You see the traffic going slow when we get to the plates.
>
> Q. So basically, if you can avoid it you try to avoid it?
>
> A. Right.
>
> Q. But if not you go –
>
> A. If there's several cars you have to go slow" (*id.* at 29, lines 2-16).

Later in his deposition, Colvin was again asked if he had been trained to avoid the plates, and he answered:

> "There's no specific training on those plates. It's just videos showing you what to do and what not to do when it's raining, snow, when you see those plates.
>
> Q. And when you see those plates in the videos do the drivers of the buses avoid the plates?
>
> A. I can't say no. I'm just saying what I see during my daily day what's the best thing to do if you see those plates. If there's not traffic you don't want to go on top of it. But if there is peoples going over it, you see everybody going slow over the plate.
>
> Q. But those videos that you're talking about, were the drivers of those buses, are those vehicles slowing down or were they avoiding the plates?
>
> A. I can't say for certain – I'm pretty sure slowing down" (*id.* at 125, line 23 through 127, line 18).

150837/2017   FLOYD, TRACY vs. CITY OF NEW YORK
Motion No.  004 005

Page 4 of 13

Construction work in the roadway

Ramo Dischino testified on behalf of Speedway on November 4, 2021 (*see* Exhibit I in support of the Transit Defendants' motion [NYSCEF Doc. No. 98]).[2] Dischino stated that he has been a partner, an officer, at Speedway since 1997 (Dischino EBT at 14, line 23 through 15, line 7). According to Dischino, in 2016, Speedway had construction going on, new renovations, repairs, heating work—"[b]asically, any type of plumbing, we would do" (*id.* at 21, lines 9-16).

Dischino testified that, in 2016, Speedway was hired to run a new line from the City water main into the building located at 153 East 116th Street, by Jackandy, LLC (*id.* at 27, line 21 through 28, line 20; at 31, lines 12-18). According to Dischino, in 2016, Speedway exclusively used a subcontractor, Transcity Water & Sewer, for its excavation work (*id.* at 33, line 21 through 34, line 2).

Dischino testified that Speedway had a subcontractor agreement with Transcity for each different job (*id.* at 52, lines 2-9). However, the subcontractor agreements were always the same, "[b]ecause the work is always the same. He's going to excavate, he's going to shore it. I do the repair. He's going to plate it. It's always the same. There's no real detail with that" (*id.* at 55, line 23 through 56, line 3). According to Dischino, "Excavation is the digging of the hole, okay, which Benny does. Opening the street is what Benny does. The installation of the plate is what Benny does. And the repair is what Benny does, of the hole. Speedway only does the plumbing. That's all I'm licensed to do" (*id.* at 83, line 21 through 84, line 3).

According to Dischino, none of Speedway's employees were present at the jobsite at 153 E. 116th Street prior to August 15 2016, and the plumbing work by Speedway was not done until after August 15 2016. (*id.* at 96, lines 14-17; at 98, lines 18-19; at 101, lines 22-24).

Bajram (also known as Benny) Muriqi appeared for a deposition on behalf of Transcity on July 2, 2021 (*see* Exhibit K in support of Speedway's motion [NYSCEF Doc. No. 116]). Muriqi testified that he and his wife, Julieta, are the owners of Transcity (*id.* at 28, lines 13-25).

Muriqi stated that Transcity is in the business of excavation and preparation for the installation of water and sewer (*id.* at 31, lines 4-5). According to Muriqi, Transcity would dig out the street using shovels, "for somebody else to come and install the water and the tap. The tap is the connection from the city main to the building" (*id.* at 40, line 16 through 41, line 4). Muriqi stated that Transcity would put in a steel plate, cover it and secure it (*id.* at 41, lines 20-21). According to Muriqi, "soon as we dig out, we take the steel plates, put it in, and cover the plate" (*id.* at 41, lines 4-6).

---

[2] Dischino's deposition transcript was also submitted as Exhibit J in support of Speedway's motion (NYSCEF Doc. No. 115).

**150837/2017  FLOYD, TRACY vs. CITY OF NEW YORK**
**Motion No.  004 005**

**Page 5 of 13**

He testified that the procedure to secure the plate is "[t]o put spikes and cold patch, blacktop" (*id.* at 42, lines 23-25). Seven inch spikes are supposed to be banged in each corner of the plate with a sledgehammer, through the asphalt to touch the metal plate (*id.* at 43, lines 7-25). The cold patch/blacktop "goes on the edge of the steel plate and asphalt" (*id.* at 45, lines 13-14). According to Muriqi, once the plates were pinned and ramped, "buses, trucks, it's approved steel plate for traffic to go over" (*id.* at 50, lines 18-19). Other than an oversize crane, "every vehicle that drives in that street can go through that, on top of that" (*id.* at 51, lines 3-7).

## DISCUSSION

"On a motion for summary judgment, the moving party must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. If the moving party produces the required evidence, the burden shifts to the nonmoving party to establish the existence of material issues of fact which require a trial of the action"(*Xiang Fu He v Troon Mgt., Inc.*, 34 NY3d 167, 175 [2019] [internal citations and quotation marks omitted]).

On a motion for summary judgment, "facts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Const. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks omitted]).

### I.    The Transit Defendants' motion for summary judgment (Seq. No. 004)

The Transit Defendants argue that they are not liable because the bus encountered a latent defect in the roadway metal plate, which led to the metal plate shifting as the bus was proceeding over it (affirmation of Transit Defendants' counsel in support of motion ¶ 15 [NYSCEF Doc. No. 87]). Additionally, the Transit Defendants argue that the complaint should be dismissed as against the MTA because the functions of the MTA with respect to public transportation are limited to financing and planning, and specifically do not include the ownership, operation, maintenance, or control of any public access vehicles, subways, roadways, bus stops, or facilities, citing *Wenthen v Metropolitan Transportation Authority* (95 AD 2d 852) and other similar cases (*id.* ¶ 35).

In opposition, Speedway argues that summary judgment should be denied because Colvin testified at his deposition that bus drivers were told in training not to drive to over steel plates (affirmation of Speedway's counsel in opposition ¶¶ 5-7 [NYSCEF Doc. No. 118]). Speedway also contends that the dangling pipe depicted in the photographs of the undercarriage of the bus "somehow disturbed the steel plate that was properly covering this hole in the street" (*id.* ¶ 8).

In opposition, plaintiff similarly argues that Colvin was trained to avoid the plate if possible, and so there are triable issues of fact as to the Transit Defendants' liability.[3]

---

[3] Plaintiff's counsel incorporated by refence the arguments and exhibits that were submitted in opposition to the Transit Defendants' motion for summary judgment in a related case, *Santos v*

**150837/2017  FLOYD, TRACY vs. CITY OF NEW YORK                        Page 6 of 13**
**Motion No.  004 005**

The Transit Defendants established a prima facie case for summary judgment dismissing the complaint as against them.

First, there is no case law nor statute that requires drivers of motor vehicles to avoid roadway plates. Ongoing road work is a fact of daily life in New York City, and the requirements of street openings and excavations is governed by 34 RCNY 2-11.  34 RCNY 2-11 (e) (10) states, in relevant part:

(i)      All plating and decking installed by the permittee *shall be made safe for vehicles and/or pedestrians* and shall be adequate to carry the load. Composite plates may be used provided that they comply with the AASHTO H25 or HS25 specifications.

(ii)     The size of the plate or decking must extend a minimum of 12 inches beyond the edge of the trench, be firmly placed to prevent rocking, and be sufficiently ramped, covering all edges of the steel plates to provide *smooth riding and safe condition.*

(iii)    All plating and decking shall be fastened by splicing, spiking, pinning, countersinking or otherwise protected *to prevent movement.*" (emphasis supplied).

Thus, under the Highway Rules of the City of New York, the plates must be made safe for vehicles to traverse and must be fastened to prevent movement.

Nothing in Colvin's testimony indicates that he was on notice that it was unsafe to drive over the roadway plate. According to Colvin, he had driven in the area of the steel plate for "probably three or four days" prior to the incident, and he had about five trips each day (*id.* at 134, lines 2-11).  On the morning of the incident, Colvin first saw the steel plate about a car length away as the bus approached it (*id.* at 90, lines 13-15; at 91, lines 14-21).  It looked the same as it looked the week before, and also looked safe to drive over (*id.* at 92, lines 8-17).

Plaintiff and Speedway fail to raise a triable issue of fact as to whether Colvin operated the bus negligently.  In the court's view, they mischaracterize Colvin's testimony about the training he had received.  Colvin did not testify that he was trained to avoid the plates.  In any event, given this court's ruling that the common-law does not require drivers to avoid roadway plates that are required by regulation to be safe to drive over, such testimony cannot be used to hold the Transit Defendants "a higher standard of care than required by common law" (*Williams v New York City Tr. Auth.*, 108 AD3d 403, 404 [1st Dept 2013]).

---

*City of New York*, 150836/2017 (*see* affirmation of plaintiff's counsel ¶ 4 [NYSCEF Doc. No. 125]).

**150837/2017   FLOYD, TRACY vs. CITY OF NEW YORK**                    **Page 7 of 13**
**Motion No.  004 005**

Speedway's contention that a pipe had moved the roadway plate is based on the speculation of counsel. The pipe depicted in the photographs does not extend to the ground, and there is no evidence that it could have reached the roadway plate so as to dislodge it.

As the Transit Defendants point out, "[i]t is well settled, as a matter of law, that the functions of the MTA with respect to public transportation are limited to financing and planning, and do not include the operation, maintenance, and control of any facility" (*Delacruz v Metropolitan Transp. Auth.*, 45 AD3d 482, 483 [1st Dept 2007]; *see also Archer v New York City Tr. Auth.*, 187 AD3d 564 [1st Dept 2020]). Thus, there is an additional ground warranting summary judgment dismissing the complaint as against the MTA.

Therefore, the Transit Defendants' motion is granted, and the complaint is severed and dismissed as against them.

Because the Transit Defendants can no longer be held liable to plaintiff, the cross-claims of the other co-defendants that sound in common-law indemnification and contribution, are dismissed by operation of law (*see e.g. Bendel v Ramsey Winch Co.*, 145 AD3d 500, 501 [1st Dept 2016] [in view of the dismissal of the complaint in its entirety as against a defendant, the cross-claims against that defendant are also dismissed]).

The Transit Defendants' own cross-claims for common-law indemnification and contribution against the other co-defendants are dismissed as academic (*Rogers v Rockefeller Group Intl.., Inc.*, 38 AD3d 747, 750 [2d Dept 2007]).

However, the dismissal of the complaint as against the Transit Defendants does not automatically result in dismissal of the cross-claims against the Transit Defendants for contractual indemnification,[4] as "the right to contractual indemnification depends upon the specific language of the contract" (*Pena v Intergate Manhattan LLC*, 234 AD3d 618, 618 [1st Dept 2025]).

## II.    Speedway's motion for summary judgment (Seq. No. 005)

### A. Summary judgment dismissing the complaint and cross-claims for contribution

---

[4] In the second cross-claim of its answer, Speedway alleged that the Transit Defendants "are obligated … by contract to indemnify and hold harmless [Speedway]" (*see* Exhibit E in support of Transit Defendants' motion, answer ¶ 21 [NYSCEF Doc. No. 94]). Similarly, Transcity asserted contractual indemnification against the Transit Defendants and breach of an agreement to procure insurance (*see* Exhibit E in support of Transit Defendants' motion, answer ¶¶ 19-22; 27-29 [NYSCEF Doc. No. 93]). If no such contracts exist, Speedway and Transcity could voluntarily discontinue their cross-claims for breach of contract as against the Transit Defendants, and the case could then be transferred out of the Transit Part.

[* 8]

Speedway argues that it is entitled to summary judgment dismissing the complaint as against it because it did not perform excavation or place the steel plate; it did not have any obligation or duty to inspect or maintain the steel plate; and it did not have any notice of any alleged defect or problem with the plate (*see* Speedway's memo of law at 14 [NYSCEF Doc. No. 105]). Speedway contends that all cross-claims for contribution must be dismissed because it is not a tortfeasor and has no duty for liability for the incident (*id.* at 19).

In opposition, Transcity asserts that Speedway employees were performing work in this excavation in the street prior to the date of the accident (affirmation of Transcity's counsel in opposition ¶ 6 [NYSCEF Doc. No.147]). Consequently, Transcity argues that there are questions of fact as to whether Speedway's workers "affected this steel plate and perhaps knocked it off its base and left it in a less than secure status" (*id.*).

In opposition, plaintiff argues that Speedway had a non-delegable duty of reasonable care to drivers and passengers because excavation work is "inherently dangerous," citing *Rosenberg v Equitable Life Assur. Soc. of U.S.* (79 NY2d 663 [1992]).

In reply, Speedway argues that it cannot be held liable unless it had control over the work site and had actual or constructive notice of the dangerous condition, citing *Russin v Louis N. Picciano & Son* (54 NY2d 311 [1981]) (reply mem. at 6 [NYSCEF Doc. No. 129]) and an unreported Supreme Court case.

The court agrees with plaintiff.

"Generally, a party who retains an independent contractor, as distinguished from a mere employee or servant, is not liable for the independent contractor's negligent acts. The primary justification for this rule is that one who employs an independent contractor has no right to control the manner in which the work is to be done and, thus, the risk of loss is more sensibly placed on the contractor. This general rule, however, is subject to various exceptions, and it has been observed that the general rule is now primarily important as a preamble to the catalog of its exceptions" (*Brothers v New York State Elec. and Gas Corp.*, 11 NY3d 251, 257-58 [2008] [internal citations and quotation marks omitted]).

One such exception is "work which is specially, peculiarly, or 'inherently dangerous'" (*id.*). In *Rosenberg v Equitable Life Assur. Socy. of U.S.*, the Court of Appeals held,

"If an owner hires an independent contractor to excavate an area next to a thoroughfare, however, the work obviously presents inherent dangers to those who must use the thoroughfare. The employer of the independent contractor retained for such work *cannot avoid vicarious liability for the*

**150837/2017  FLOYD, TRACY vs. CITY OF NEW YORK**                    **Page 9 of 13**
**Motion No.  004 005**

[* 9]

contractor's negligence because the work was performed by another" (79 NY2d at 669 [emphasis supplied]).

*Rosenberg* remains the law. Indeed, in *Ortiz v Nunez*, the Appellate Division, First Department rejected the defendant's argument that it should not be liable for the negligence of its independent contractor, stating, "anyone undertaking work on a public highway is under a nondelegable duty to avoid creating conditions dangerous to the users of that thoroughfare" (32 AD3d 759, 760 [1st Dept 2006]).

Speedway's reliance upon *Russin v Louis N. Picciano & Son* (54 NY2d 311, *supra*) and an unreported Supreme Court case is misplaced. Those cases involved liability under Labor Law §§ 200, 240 (1) and 241.

In light of Speedway's non-delegable duty, the court need not reach Transcity's argument that Speedway workers might have knocked the plate off its base or left it unsecured.

Thus, the branch of Speedway's motion for summary judgment dismissing the complaint as against it and all cross-claims for contribution is denied.

### B. Summary judgment in Speedway's favor on its cross-claim against Transcity for contractual and common-law indemnification

Speedway argues that it is entitled to contractual indemnification from Transcity pursuant to a "Subcontractor Agreement" between Speedway and Transcity, and to common-law indemnification because Transcity, not Speedway, performed the work that allegedly caused the incident (*see* Speedway's mem. at 17-18).

Transcity contends that Speedway employees were performing work in this excavation in the street prior to August 15, 2016, the date of the incident (*see* affirmation of Transcity's counsel in opposition ¶ 5 [NYSCEF Doc. No. 147]). Transcity therefore argues that questions of fact exist as to whether Speedway workers affected this steel plate, and perhaps knocked it off its base and left it in a less than secure status (*id.* ¶ 6).

As discussed above, "the right to contractual indemnification depends upon the specific language of the contract" (*Pena*, 234 AD3d at 618). "[A] contractual indemnitee must 'establish that it was free from any negligence and was held liable solely by virtue of the statutory liability'" (*Travalja v 135 W. 52nd St. Owner LLC*, 232 AD3d 503, 505 [1st Dept 2024], quoting *Correia v Professional Data Mgt., Inc.*, 259 AD2d 60, 65 [1st Dept 1999]).

Here, Article 4 states:

"The work performed by the subcontractor shall be at the risk of the Subcontractor exclusively. Subcontractor hereby indemnifies and holds

**150837/2017  FLOYD, TRACY vs. CITY OF NEW YORK**                    **Page 10 of 13**
**Motion No.  004 005**

Contractor, its parent and affiliates and their respective officers, directors, employees and agents, harmless from and against any and all claims, actions, losses, Judgements or expenses, including reasonable attorneys fees, arising from or in any way connected with the work performed, materials furnished, or services provided to Contractor during the term of this Agreement" (Exhibit G in support of Speedway's motion [NYSCEF Doc. No. 152]).

This action falls within the terms of Article 4 as "action[ ] . . . arising from or in any way connected with the work perfomed [by Transcity]." Additionally, according to Dischino, none of Speedway's employees were present at the jobsite at 153 E. 116th Street prior to August 15 2016, and the plumbing work by Speedway was not done until after August 15 2016. (Dischino EBT, at 96, lines 14-17; at 98, lines 18-19; at 101, lines 22-24). Thus, Speedway has met its prima facie burden of entitlement to summary judgment in its favor against Transcity as to liability for contractual indemnification.

Speedway also demonstrated its entitlement to summary judgment in its favor against Transcity for common-law indemnification.

"in the case of common-law indemnification, the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident for which the indemnitee was held liable to the injured party by virtue of some obligation imposed by law" (*Correia*, 259 AD2d at 65 [internal citation omitted]).

As discussed above, Dischino testified that none of Speedway's employees were present at the job site until after August 16, 2016. Thus, Speedway established that that it played no role in moving the plate that Transcity installed.

Transcity failed to raise a triable issue of fact as to whether Speedway was negligent. Transcity's counsel did not cite to evidence in the record either that Speedway was performing work in the street prior to August 15, 2016, or that Speedway had moved the plate that Transcity installed.

Thus, the branch of Speedway's motion for summary judgment in its favor against Transcity for contractual and common-law indemnification is granted as to liability.

### C. Summary judgment dismissing Transcity's cross-claim against Speedway for breach of an agreement to procure insurance

Speedway demonstrated its entitlement to summary judgment dismissing Transcity's cross-claim for insurance coverage as against Speedway, which was alleged in paragraphs 27 through 29 of Transcity's answer (*see* Exhibit C in support of

150837/2017 FLOYD, TRACY vs. CITY OF NEW YORK Page 11 of 13
Motion No. 004 005

11 of 13

[* 11]

Speedway's motion [NYSCEF Doc. No. 108]). However, Article 2 of the Subcontractor Agreement between Speedway and Transcity requires "the Subcontractor" (i.e., Transcity) to procure insurance, not Speedway (*see* Exhibit G in support of Speedway's motion [NYSCEF Doc. No. 112]).

Because Transcity did not oppose this branch of Speedway's motion, it failed to raise a triable issue of fact as to whether Speedway was contractually required to procure insurance for Transcity.

## CONCLUSION & ORDER

Accordingly, it is hereby

**ORDERED** that the motion for summary judgment dismissing the complaint by defendants New York City Transit Authority, Metropolitan Transportation Authority, and MTA Bus Company, Inc. (Seq. No. 004) is **GRANTED**, and the complaint is severed and dismissed as against these defendants, without costs and disbursements to these defendants against plaintiff as taxed by the Clerk, upon submission on an appropriate bill of costs; and it is further

**ORDERED** that the Clerk is directed to enter judgment in favor of defendants New York City Transit Authority, Metropolitan Transportation Authority, and MTA Bus Company, Inc. accordingly; and it is further

**ORDERED** that the cross-claims by defendants New York City Transit Authority, Metropolitan Transportation Authority, and MTA Bus Company, Inc. that sound in common-law indemnification and contribution are dismissed; and it is further

**ORDERED** that the cross-claims of defendants City of New York and Consolidated Edison Company of New York, Inc. against defendants New York City Transit Authority, Metropolitan Transportation Authority, and MTA Bus Company, Inc. are dismissed; and it is further

**ORDERED** that the first cross-clam of defendant Speedway Plumbing Corp. is dismissed as against defendants New York City Transit Authority, Metropolitan Transportation Authority, and MTA Bus Company, Inc. is dismissed; and it is further

**ORDERED** that the first and third cross-clams of defendant Transcity W&S LLC is dismissed as against defendants New York City Transit Authority, Metropolitan Transportation Authority, and MTA Bus Company, Inc.; and it is further

**ORDERED** that the motion for summary judgment by defendant Speedway Plumbing Corp. (Seq. No. 005) is **GRANTED IN PART** as follows:

(1) the branch of Speedway Plumbing Corp.'s motion for summary judgment in its favor on its cross-claims against defendant Transcity W&S LLC for

[* 12]

contractual indemnification is **GRANTED** as to liability, and the amount of damages shall be determined at trial;

(2) the branch of Speedway Plumbing Corp.'s motion for summary judgment dismissing the cross-claim of defendant Transcity W&S LLC for insurance coverage is **GRANTED**, and that cross-claim is dismissed as against defendant Speedway Plumbing Corp.; and it is further

**ORDERED** that the remainder of Speedway Plumbing Corp.'s motion for summary judgment is otherwise denied; and it is further

**ORDERED** that the remainder of the action shall continue.

20250527132240RTSAIB42C8545096945D1ADFC1B9C23D261E6

| 5/27/2025 | | | | |
|-----------|---|---|---|---|
| **DATE** | | | **RICHARD TSAI, J.S.C.** | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| MOTION SEQ. NO. 004 | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| MOTION SEQ. NO. 005 | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**150837/2017  FLOYD, TRACY vs. CITY OF NEW YORK**                    **Page 13 of 13**
**Motion No.  004 005**

[* 13]                              13 of 13